# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KENT DOUGLAS UITTS, )
)
        Plaintiff, )
)
v. ) Case No. CIV-15-377-RAW-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## REPORT AND RECOMMENDATION

    The claimant Kent Douglas Uitts requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on February 1, 1958, and was fifty-six years old at the time of the most recent administrative hearing (Tr. 38). He earned a GED, and has worked as a security guard (Tr. 29, 201). The claimant alleges he has been unable to work since September 1, 2007, due to an operation on his right shoulder and back problems (Tr. 200).

### Procedural History

On January 14, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Lantz McClain held an administrative hearing and determined the claimant was not disabled in a written decision dated October 31, 2014 (Tr. 22-30). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk and sit for six hours during an eight-hour workday,

but that he should avoid work requiring exposure to extreme cold, vibrations, and hazardous machinery, as well as avoid working in an environment with high dust or fumes (Tr. 26). The ALJ thus concluded that the claimant could return to his past relevant work as a security guard (Tr. 29).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly weigh the medical evidence, specifically a treating physician opinion; (ii) improperly assessing his credibility; and (iii) failing to adequately consider his obesity. The undersigned Magistrate Judge agrees with the claimant's second contention, and the Commissioner's decision should be reversed.

The ALJ determined that the claimant had the severe impairments of history of compression fracture in the thoracic spine, degenerative joint disease of the right acromioclavicular joint, status post right collar bone fracture with surgery, impingement syndrome in the left shoulder, hypertension, non-insulin-dependent diabetes mellitus, asthma, and obesity (Tr. 274). The medical evidence reveals that the claimant was admitted to the emergency room at Greater Regional Medical Center in Creston, Iowa on June 19, 2012, after he had been bucked from a horse (Tr. 280). On July 23, 2013, the claimant presented with low back and leg pain, as well as knee pain, and was treated with medications. He was noted to have degenerative joint disease (Tr. 309).

Dr. E.J. Wilkinson, Jr., D.O., completed an assessment of the claimant on March 1, 2011, stating that he was post right shoulder surgery and also had impairment to his left shoulder, as well as degenerative joint disease, and that he expected the condition to

last six or more months (Tr. 266). He indicated that this condition limited his employment ability, and that he was restricted to not raising his arms above the waist, and zero lifting, pushing, pulling, and carrying, with a maximum weight of ten pounds (Tr. 266). On April 4, 2013, Dr. Tom Young conducted a consultative examination of the claimant and noted he had a limited range of motion of the right shoulder, and pain in the mid back even to light touch (Tr. 289). He assessed the claimant with pain in joint involving shoulder region, morbid obesity, unspecified essential hypertension, pain in thoracic spine, hyperlipidemia, and asthma (Tr. 289). Dr. Young concluded that the claimant had good strength of his upper and lower extremities, and that he was able to stand, walk, and move about in an eight-hour period, nor did he foresee any difficulty with bending, stooping, and kneeling (Tr. 289). He further foresaw no communication problems, but noted that the claimant should avoid environments that are high dust areas or areas with fumes (Tr. 289).

On November 13, 2013, Dr. Karen Krogstead, one of the physicians at his treating clinic, completed a "Summary Impairment Questionnaire" in which she indicated that the claimant's diagnoses were hypertension, hyperlipidemia, chronic back pain, and shoulder pain (Tr. 298). She noted that no previous evaluation of the claimant's back or shoulder pain had been done, and that an MRI recommended epidural steroid injection and physical therapy but the patient refused (Tr. 298). She then indicated that the claimant could sit and/or stand/walk less than one hour per day without the recommended treatment, and that he could frequently lift up to ten pounds and up to twenty pounds

occasionally (Tr. 299). She further indicated that he would be absent, on average, more than three times a month from work (Tr. 299).

A radiological scan of the claimant's right shoulder on December 10, 2013, revealed that his right distal clavicle had previously been resected, and that he had degenerative narrowing of the right glenohumeral (Tr. 326). An MRI of his back revealed that L1-2 had fairly marked degenerative disc space narrowing, L4-5 had narrowing of the right lateral recess related to mild uniform bulging of the disc annulus and facet hypertrophy, and L5-S1 had mild to moderate disc space narrowing and some bulging of the disc annulus that is central, left paracentral, and into the left lateral recess, as well as narrowing of both lateral recesses at L5-S1 related to the bulging disc in conjunction with facet hypertrophy and ligamental flavum hypertrophy (Tr. 327). A handwritten noted indicated that the claimant refused epidural steroid injections but said he would think about physical therapy (Tr. 327).

At the administrative hearing, the claimant testified that he had arthritis in both hips, knees, and shoulders, and that he had recently learned he was a diabetic (Tr. 44). He testified that he could not lift over eight pounds, which is "what I've always carried" and that anything over that caused a great deal of pain (Tr. 44-46). He estimated he could sit for twenty-five to thirty minutes before needing to stand up, that he could comfortably walk a half a block, and that sitting hurts his lower back and right shoulder (Tr. 46). He stated that he takes pain medication and will lie down four or five times a day to alleviate pain (Tr. 50).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record (Tr. 26-29). The ALJ summarized Dr. Young's opinion, and noted that the RFC assessment accounted for Dr. Young's restrictions based on asthma (Tr. 28). He also noted that Dr. Young's assessment did not support any further restrictions than the assigned RFC and did not support the severity alleged by the claimant (Tr. 28). In summarizing the claimant's treatment history, he noted the claimant's treatment for back pain and hypertension, as well as the MRI of his back and radiological scan of his right shoulder. He then stated that, "although some abnormalities were found on examination and objective studies, the abnormal findings do not support the alleged severity of the claimant's impairments, and did not support greater limitations than were found in the RFC assessment" (Tr. 28). He then found that the claimant was not fully credible, stating that there "appears to be no reason he could not have worked through most of his lif[e]. It therefore appears he is motivated to draw disability rather than walk" (Tr. 28).

The claimant contends, *inter alia*, that the ALJ erred in analyzing his credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing

court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

### Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.